Hancock et al. *v.* Borough of Wyoming, Appellant.

| 148  | 635 |
|------|-----|
| e208 | ¹ 79 |
| 148  | 635 |
| 27 SC | ¹441 |

*Highway—Location—Change of.*

When once a public highway has been located and laid out upon the ground, and used by the public, its location cannot be changed except by proceedings under the road laws.

*Wyoming avenue—Act of April* 14, 1851.

Wyoming avenue has been open of its full width and used as a public highway for very many years. By the act of April 14, 1851, commissioners were appointed "to re-survey the said road and ascertain and fix the original lines of the same." The road, as fixed by these commissioners, was not on the lines of the road laid out and opened by the viewers originally appointed by the court in 1788. *Held*, that the borough of Wyoming had no authority to compel the landowners bordering on Wyoming avenue to conform to the road as returned by the commissioners of 1851.

*Constitutional law*—" *Due process of law.*"

It seems that the act of April 14, 1851, is unconstitutional as not providing " due process of law."

Argued April 14, 1892.   Appeal, No. 371, Jan. T., 1892, by defendant, from decree of C. P. Luzerne Co., Dec. T, 1890, No. 4, in equity, enjoining defendant at the suit of William Hancock and others.   Before PAXSON, C. J., STERRETT, GREEN, McCOLLUM, and MITCHELL, JJ.

Bill for an injunction to prevent defendant from removing the buildings and fences of plaintiffs.

The case was referred to a master, Henry M. Hoyt, who reported, in part, as follows :

" The plaintiffs in this case are, severally, the owners of real estate fronting on Wyoming avenue in the borough of Wyoming, Luzerne county.   The purpose of the bill is to restrain the defendant, the borough of Wyoming, from destroying or disturbing the improvements, trees, buildings, fences, etc., of the plaintiffs on certain lots fronting on said road.   The questions therefore are—are the improvements, etc., on these lots within the line of the public highway, and, if so, are they liable to be removed under the action of the defendant by summary proceedings ? . . . .

" The road is six rods wide and was laid out by order of the Quarter sessions of Luzerne county by viewers appointed by

the court in 1788. Their report is on record, on pages 20 and 21, Road Docket No. 1, September sessions, 1788. There has been no legal action by the courts since that date which could affect the boundaries of the road as then opened and used. The location of this road is the question at issue.

"The lots fronting on the road were by the commissioners under the act of April 4, 1799, (Smith's Laws, vol. 3, page 362,) bounded on said road, and the official surveys call for this road. These surveys were made in 1802. By the act of assembly of April 14, 1851, P. L. 583, the state appointed certain commissioners "to carefully retrace the original lines of said road." These commissioners made their report filed September 1, 1851, recorded in Extra Road Book, page 65, with a map recorded in Map Book, page 115. It is under the authority of this report that the borough authorities seem to have based their action. The report of viewers in 1788—the line of ' Certified Lots ' bounded on this road by surveys in 1801 and 1802, and the report of the commissioners under the act of 1851, thus constitute the data for the location of this road.

" Unfortunately for arriving at the truth, the lines of these three roads, or these three lines, through the territory in controversy, do not correspond.

\* \* \* \* \* \* \* \*

" The work of the commissioners of 1851 can only be valid in case and on condition that they retraced the original lines of the road. The moment their work differed from the work of the viewers of 1788, it ceased to have validity. The legality of their work and their findings depend on its correspondence with the location and opening of the road as already established by act of the law. The commission took no judicial authority by virtue of the act by which they were appointed. The commissioners under the act had no authority to interfere with rights outside of the road. That the commissioners, under that act, did not definitely ' retrace the original lines of the said road ' is evident from the face of their report. They do not pretend they found any monument. They state that their location of the road is based on the statement of citizens—mere neighborhood talk—local tradition—that the several monuments which governed them were considered ' by old citizens of the place as authentic.' Evidently, they deemed it ' expedient ' to adopt

the lines of the neighborhood and traditional talk.  While it
may be (and likely is) true that this line was a most available
compromise between the conflicting claims of right by citizens
of the place, 'strong evidence that the inhabitants had been re-
gardful of metes and bounds and had shown a laudable spirit
in carefully preserving the width of the road' is not the kind
of evidence as to 'monuments' which the law recognizes.   'The
several monuments that have governed them,' are evidently the
fences and houses on lots on the east side of the road—inhabit-
ants on the west side could point to the same evidence in kind
of an entirely different location of the road.   Any owner of
adjoining lots whose rights were interfered with by the loca-
tion would not be bound by it, because the commission could
not have exercised judicial rights.   No notice of any kind was
given to the public or the lot owners that the commission was
proceeding to adjudicate their rights.   Their proceedings are a
nullity and their findings conclude nobody.   It was a tribunal
proceeding, manifestly without 'due process of law:' Penny
Pot Landing, 16 Pa. 89; Rutherford's Case, 72 Pa. 82; Erv-
ine's Ap., 16 Pa. 256 ; Phila. v. Scott, 81 Pa. 80.

"It follows from these views that the road, as fixed by the com-
missioners of 1851, is not on the lines of the road laid out and
opened according to the report of the viewers of 1788, as matter
of fact.   As matter of law, they had no jurisdiction or authority
to locate a new road.   The borough of Wyoming, therefore,
had no authority in law to compel the lot owners bordering on
Wyoming avenue to conform to the road as returned by the
commissioners of 1851.   The act appointing them was uncon-
stitutional: Rutherford's Case, 72 Pa. 82; Ervine's Ap., 16
Pa. 256.

"Whatever the rights of the borough may be, they cannot be
adjusted in this proceeding.   Until the location of Wyoming
avenue is ascertained, legally or by 'due process of law,' no
tribunal can adjust the disputed claims of adjoiners on this road.
If it is desirable to alter or relay this road it seems probable
that new proceedings must be commenced under the road laws,
with due notice to all interested: Furniss v. Furniss, 29 Pa.
15 ; McMurtrie v. Stuart, 21 Pa. 322 ; Clark v. Commonwealth,
33 Pa. 113."

Exceptions filed to the report of the master were dismissed

by the court below and the report confirmed in the following opinion by WOODWARD, J.:

"The above case is in substance a bill to restrain the defendant from opening or straightening Wyoming avenue in accordance with the lines as designated in the report of the commissioners appointed in pursuance of the act of assembly of 14th April, 1851, Pamph. Laws, 583, etc. This line differs widely from the line of the road as actually used as far back as there is any recollection of living men. After full argument and careful consideration, [we are of opinion that that act does not provide for 'due process of law' and that the property owners along said highway are not to be concluded nor even prima facie affected in their rights by that proceeding of which they had no notice:] Rutherford's Case, 72 Pa. 82; Ervine's Appeal, 16 Pa. 256; Phila. v. Scott, 81 Pa. 80."

*Errors assigned* were, among others, (1) the portion of the opinion as above in brackets, quoting it; (6) not dismissing the plaintiffs' bill.

*William S. McLean,* for appellants.

*Allan H. Dickson, Thomas H. Atherton* with him, for appellee.

PER CURIAM, April 25, 1892:

This bill was filed to restrain the borough of Wyoming from removing buildings, fences and improvements, which the complainants allege are upon their private property, and not in the public highway. We have a clear and able report from the learned master, from which it appears that Wyoming avenue has been opened of its full width, and used as a public highway beyond the memory of any living man. It has probably been so used for, at least, a hundred years. He further finds the fact that the alleged obstructions are not within the lines of the highway as it exists upon the ground. When once a public highway has been located and laid out upon the ground, and used by the public, its location cannot be changed, except by proceedings under the road laws. This would be so, even though the boundaries do not precisely conform to the survey: Commonwealth v. Dicken, 145 Pa. 453.

The decree is affirmed, and the appeal dismissed at the costs of the appellant.